IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 15-cv-02380-GPG

JAMEL A. SUBOH,

    Plaintiff,

v.

DENVER HEALTH HOSPITAL,
DENVER SHERIFF DEPARTMENT,

    Defendants.

## ORDER TO AMEND

Plaintiff, Jamel A. Suboh, currently is incarcerated at the Denver County Jail. Plaintiff initiated this action by filing *pro se* a Prisoner Complaint pursuant to 42 U.S.C. § 1983 (ECF No. 1) and a Prisoner's Motion and Affidavit for Leave to Proceed Pursuant to 28 U.S.C. § 1915 (ECF No. 2). Plaintiff has been granted leave to proceed *in forma pauperis*. (ECF No. 6).

The Court must construe the Complaint liberally because Plaintiff is a *pro se* litigant. *See Haines v. Kerner*, 404 U.S. 519, 520-21 (1972). However, a court should not act as a *pro se* litigant's advocate. *See id.* For the reasons stated below, the Court will order Plaintiff to file an amended complaint. If he wishes to pursue his claims in this action.

### I. Plaintiff's Allegations

According to Plaintiff, while he was incarcerated at the Denver County Jail, he complained of wax buildup in his ear and requested a Q-tip. A nurse advised him to use

1

hot shower water to rinse the wax out of his ear. The next day, Plaintiff developed an ear infection. He requested to be treated with anti-biotic ear drops. Nurse Mellissa confirmed his ear infection but told him, "we don't do drops." Instead, she prescribed Plaintiff oral antibiotics.

After beginning the antibiotics, Plaintiff was temporarily transferred to the Jefferson Sheriff Department in Golden, Colorado. The Denver County Jail nursing staff assured Plaintiff that his antibiotic medication would be transferred with him so that he would not miss any doses. When he arrived at the Jefferson Sherriff Department, he was told that there was no record of any medications. Eventually, the Jefferson Sheriff Department prescribed Plaintiff the same oral antibiotic medicine.

When he returned to the Denver County Jail, the jail had cancelled his medications because he was gone for six days. According to Plaintiff, he requested to see a nurse again because his ear infection was worsening, with a thick yellow puss drainage. Nurse Pam told Plaintiff that the original medication prescribed was not the right kind of antibiotic. She verified this information with Dr. Stobb.

In early October, Plaintiff was at court, when he lost his balance due to equilibrium issues caused by his ear infection. He stood up, lost his balance, and fell over backwards, injuring his tailbone, ribs, and shoulder. After returning to the jail, he was seen by Nurse Sophea, who said she would call Dr. Stobb. Soon after Plaintiff was sent back to his unit, he was called back out and taken to the emergency room at Denver Health.

The first doctor at Denver Health told Plaintiff that the Denver Jail nursing staff had been giving Plaintiff the wrong type of antibiotics. The next doctor ordered a cat-

scan, which revealed that the infection had spread to the bone behind Plaintiff's ear. An ENT doctor then noted that Plaintiff had a type of skin growth and that Plaintiff would need surgery for the bone infection as soon as the skin infection cleared. Plaintiff was admitted to the hospital and given IV antibiotics. He was sent back to jail after four days.

After returning to jail, three or four days later, Plaintiff was called to the nursing station, where Nurse Mellisa told him that she and Dr. Stobb decided to discontinue Plaintiff's medications. According to Plaintiff, Nurse Mellisa implied that he missed too many doses causing the infection to continue for so long.

On October 20, 2015, a nurse doing her rounds asked Plaintiff why he had not been taking his noon medication. Plaintiff learned that he had missed doses of antibiotics for twelve days because no one in the medical department notified him of his need to take a noon dose of medication.

On October 21, 2015, the evening nurse told Plaintiff that the medical staff "know they screwed up and the[y] will be starting [Plaintiff] on yet another antibiotic." Plaintiff alleges that as of October 21, 2015, his left ear has been infected for over 80 days. He has been on nine plus different antibiotics. He was later seen directly by Dr. Stobb, who decided to continue Plaintiff on the same medication and add another medication to help with the ear drainage.

Plaintiff's complaint is not a model of clarity. He asserts three claims pursuant to 42 U.S.C. § 1983: (1) "Ear Infection/ Understaffed Medical Dept.;" (2) "Loss of hearing, impaired vision, balance issues;" (3) "Infection spread to bone/ surgery needed." The

Court will liberally construe Plaintiff's complaint as alleging denial of adequate medical treatment.

## II. Liability under 42 U.S.C. § 1983

Plaintiff seeks to assert liability against Defendants pursuant to 42 U.S.C. § 1983. To state a claim under 42 U.S.C. § 1983, a plaintiff must meet two threshold requirements. He must allege: 1) that the alleged misconduct was committed by a person acting under color of state law; and 2) that as a result, he was deprived of rights, privileges, or immunities secured by the Constitution or laws of the United States. *West v. Atkins*, 487 U.S. 42 (1988); *Parratt v. Taylor*, 451 U.S. 527, 535 (1981), *overruled in part on other grounds*, *Daniels v. Williams*, 474 U.S. 327, 330–331 (1986).

### A. Parties Sued

First, Plaintiff may not maintain claims against Denver Sheriff's Department. The Sheriff's Department is not an entity separate from the City and County of Denver and, therefore, is not a person subject to suit under § 1983. *See Stump v. Gates*, 777 F. Supp. 808, 814-16 (D. Colo. 1991), *aff'd*, 986 F.2d 1429 (10th Cir. 1993).

Moreover, a local government entity such as the City and County of Denver is not liable under 42 U.S.C. § 1983 solely because its employees inflict injury on a plaintiff. *Monell v. New York City Dep't of Social Servs.*, 436 U.S. 658, 694 (1978); *Hinton v. City of Elwood, Kan.*, 997 F.2d 774, 782 (10th Cir. 1993). A plaintiff seeking to hold a city and county liable for his injuries under § 1983 must show that a policy or custom exists and that there is a direct causal link between the policy or custom and the injury alleged. *City of Canton, Ohio v. Harris*, 489 U.S. 378, 385 (1989); *Myers v. Oklahoma County Bd. of County Comm'rs,* 151 F.3d 1313, 1316-20 (10th Cir. 1998). Plaintiff cannot state

a claim for relief under § 1983 merely by pointing to isolated incidents. *See Monell*, 436 U.S. at 694.

Further, Plaintiff is suing Denver Health Hospital, which is an entity contracted with the City and County of Denver to provide health care for inmates. As such, it is also governed by the *Monell* standard. Denver Health Hospital may be sued for alleged civil rights violations by its employees pursuant to 42 U.S.C. § 1983 only if those actions were taken pursuant to an official policy or custom. *See Dubbs v. Head Start, Inc.,* 336 F.3d 1194, 1216 (10th Cir. 2003); *see also Villalpando v. Denver Health and Hospital Authority*, 65 Fed. App'x 683 (10th Cir. 2003). Therefore, "a private actor cannot be held liable solely because it employs a tortfeasor - or, in other words, . . . cannot be held liable under  § 1983 on a respondeat superior theory." *Id.* (citing *Monell*, 436 U.S. at 691 (emphasis in original)).

### B.  Standard for Constitutional Violation

Further, Plaintiff's complaint does not identify the specific constitutional claims he is asserting. Liberally construing the complaint as asserting claims for inadequate medical care, the allegations fail to state a constitutional violation.

Claims related to denial of adequate medical treatment by pretrial detainees are evaluated under the Due Process Clauses of the Fifth and Fourteenth Amendments, which prohibit the defendants from undertaking acts that amount to punishment. *See Bell v. Wolfish*, 441 U.S. 520, 535 (1979). The law is clear that a pretrial detainee is entitled to the same degree of protection against denial of medical attention that applies to convicted inmates under the Eighth Amendment. *See Martinez v. Beggs*, 563 F.3d 1082, 1088 (10th Cir. 2009). In this regard, the Eighth Amendment protects convicted

prisoners against the infliction of "cruel and unusual punishments." U.S. Const. amend. VIII. This protection, enforced against the states through the Fourteenth Amendment, guarantees incarcerated persons humane conditions of confinement. Specifically, prison officials must ensure that inmates receive adequate food, clothing, shelter and medical care, and must "take reasonable measures to guarantee the safety of the inmates." *Famer v. Brennan*, 511 U.S. 825, 832 (1994) (quoting *Hudson v. Palmer*, 468 U.S. 517, 526–27 (1984)).

To state an Eighth Amendment violation in the context of inadequate medical treatment, an inmate must demonstrate two elements: (1) he was suffering from a "serious medical need," and (2) prison officials were deliberately indifferent to the serious medical need. *Gamble v. Estelle*, 439 U.S. 97 (1978).

Plaintiff's complaint fails to demonstrate the second subjective element. The second prong requires the court *subjectively* to determine whether the officials acted with a sufficiently culpable state of mind, known as deliberate indifference. While an intentional refusal to provide any medical treatment to an inmate suffering from a serious medical need manifests deliberate indifference and is actionable under the Eighth Amendment, the Constitution does not require that a prisoner receive every medical treatment that he requests or that is available elsewhere. A disagreement as to the appropriate choice of medical treatment does not give rise to a constitutional violation because the "right to be free from cruel and unusual punishment does not include the right to the treatment of one's choice." *Layne v. Vinzant*, 657 F.2d 468, 473 (1st Cir. 1981).

Plaintiff's complaint alleges "ineffective medical practices," "medical malpractice," and "negligence." These allegations simply do not amount to a constitutional violation. If Plaintiff wishes to pursue his claims in this action, he must amend his complaint to allege a valid constitutional violation.

Accordingly, it is

ORDERED that Plaintiff file, **within thirty (30) days from the date of this order**, an amended complaint as directed in this order. It is

FURTHER ORDERED that Plaintiff shall obtain the court-approved Prisoner Complaint form (with the assistance of his case manager or the facility's legal assistant), along with the applicable instructions, at www.cod.uscourts.gov. It is

FURTHER ORDERED that, if Plaintiff fails to file an amended complaint that complies with this order within the time allowed, the action may be dismissed without further notice.

DATED November 23, 2015, at Denver, Colorado.

BY THE COURT:

Gordon P. Gallagher
United States Magistrate Judge